# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARY BOWLING,<br><br>    Plaintiff,<br><br>  v.<br><br>DIAMOND RESORTS<br>INTERNATIONAL, INC., *et al.*,<br><br>    Defendants. | CIVIL NO. 17-00562 DKW-RLP<br><br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION TO<br>DISMISS** |

## **INTRODUCTION**

Bowling alleges that she was wrongfully terminated from her timeshare sales position due to an unspecified disability, in violation of federal and state law, while on leave under the Family Medical Leave Act ("FMLA").   Defendants move to dismiss her claims as deficiently pled.   Because Bowling fails to provide sufficient facts to maintain claims for disability discrimination or retaliation under the Americans With Disabilities Act ("ADA"), Hawaii Revised Statutes ("HRS") § 378-2, or for violation of the FMLA, and also fails to establish that two of the three Defendant entities were her employers, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.   Bowling's Title VII retaliation claim, however, is dismissed without leave to amend for failure to exhaust required administrative remedies.

# BACKGROUND

## I.    Factual Background

Bowling worked as a Vacation Counselor selling Diamond Resorts
International, Inc. ("DRI") timeshare properties on Kauai from 2013 until her
termination in February 2016.   She sold "points" to members of the public and
current DRI timeshare owners from a salesroom located at a DRI resort at Poipu.
Her paychecks and W-2 list her employer as West Maui Resort Partners, L.P.
("WMRP").   First Amended Complaint ("FAC") ¶¶ 9, 13.   In recognition of her
2015 sales performance, Bowling was invited to attend a Chairman's Dinner in
Florida because she was "the #2 ranked salesperson nationally for DRI."   FAC
¶¶ 15–16.

Bowling states that she is "71 and disabled," FAC ¶ 17, and "[a]s a result of
her disability, [she] could not make the long flight to Florida and asked for an
accommodation that DRI allow her not to attend the Chairman's Dinner."   FAC
¶ 18.   According to Bowling, DRI improperly denied her request for a reasonable
accommodation and then terminated her because she could not travel to Florida for
the awards dinner.   FAC ¶ 10.

Bowling alleges that her manager and regional manager "repeatedly told [her]
how important it was to them and to DRI that she fly to Florida to attend the dinner."
Although she asked for an accommodation, "that because of her disability, she not

be required to make the trip and attend the dinner," her managers nevertheless "refused the requested accommodation and demanded Plaintiff fly to Florida for the dinner. [Bowling] said she could not." FAC ¶ 19.

The FAC asserts that, due to her unspecified disability, on February 12, 2016, Bowling requested to take FMLA leave with her HR department, and "was told by HR that she could take FMLA leave. Because of her disability, on [February 12, 2016], [Bowling] went out on FMLA leave." FAC ¶ 19. That same date, she checked with HR and was "told there w[ere] no pending complaints against her." FAC ¶¶ 20, 26. Bowling was terminated on February 15, 2016 while on FMLA leave, FAC ¶¶ 22–23, because she allegedly refused to fly from Kauai to Florida to attend the awards dinner. FAC ¶¶ 24, 27.

According to Bowling, "DRI, to cover up the real reason for her termination, came up with a pretextual reason for her termination—saying Plaintiff was terminated as a result of a complaint from one of DRI's timeshare customers involving a transaction in which Plaintiff and several other employees of DRI were involved." FAC ¶ 28. Although many of DRI's other Kauai timeshare salespeople had complaints lodged against them by customers, Bowling alleges that none had been terminated because of such complaints, and therefore, her termination was pretextual. FAC ¶¶ 29–33.

## II.    Procedural Background

On August 3, 2016, Bowling filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Hawaii Civil Rights Commission, alleging that she was terminated while on FMLA leave "due to a disability."   Charge, Bowling Decl. at 1, Dkt. No. 18-2.   In the Charge, Bowling states: "I was discriminated against by my employer in violation of both the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.* and Hawaii's Fair Employment Practices Act HRS § 378-2."   *Id.* at 5.

On February 26, 2018, Bowling filed her FAC against DRI, WMRP, and Diamond Resorts West Maui Development, LLC ("Development LLC").   She asserts separate causes of action for violation of the ADA, FAC ¶¶ 53–57, and HRS § 378-2, FAC ¶¶ 62–64, alleging that Defendants discriminated against her due to her disability and failed to provide a reasonable accommodation.   The FAC also includes a cause of action entitled "Retaliation in Violation of Title VII of the Civil Rights Act of 1964 as Amended and the ADA and the Family Medical Leave Act," which asserts that "DRI unlawfully retaliated against Plaintiff Bowling, by wrongfully terminating her employment, because she engaged in protected activity, and because she took FMLA leave."   FAC ¶ 60.

Defendants seek dismissal of Bowling's ADA, HRS § 378-2, and FMLA claims for failure to state a claim, and dismissal of her Title VII retaliation claim for

failure to exhaust her administrative remedies. They also contend that DRI and Development LLC must be dismissed from this action because neither was Bowling's employer, nor are they liable under a joint-employer theory of liability.[1]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference in the complaint, or matters of judicial notice, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary

---

[1]Defendants also move to dismiss any claim for punitive damages, which Bowling agrees may not be brought as an independent claim. She asserts, instead, that she seeks such relief only as a remedy for any substantive claim that allows for the provision of punitive damages.

judgment. *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003); Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Because the EEOC Charge is referenced in the FAC and is a matter of public record, the Court may take judicial notice of that document. *See, e.g., Onodera v. Kuhio Motors Inc.,* 2013 WL 4511273, at *2 (D. Haw. Aug. 23, 2013) (citing *EEOC v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172, 1193 n.5 (D. Haw. 2012).[2]

## DISCUSSION

Bowling's claims for violation of the ADA, HRS § 378-2, and the FMLA are not supported with sufficient factual allegations to state plausible claims for relief. Her blanket assertion that she is "disabled," without more, is deficient for purposes of her ADA and HRS § 378-2 claims, nor does she allege the requisite elements of a claim for violation of the FMLA. With respect to Defendants DRI and

---

[2]Moreover, in order to establish subject matter jurisdiction over her Title VII claim, Plaintiff was required to exhaust her administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1) or at any time under Rule 12(h)(3), *Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983), and a federal court must generally "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case," *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). When considering its subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine*, 704 F.2d at 1077 (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp*., 594 F.2d 730, 733 (9th Cir. 1979)); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Where the court considers evidence outside the pleadings for this limited purpose, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733).

Development LLC, there are no facts in the FAC demonstrating that either was Bowling's employer or that are sufficient to create liability under a joint-employer theory.   Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to these claims and parties.   Because these defects may be curable, the Court grants Bowling leave to amend these portions of her complaint.   Bowling's Title VII retaliation claim, however, is dismissed without leave to amend for failure to exhaust her administrative remedies.

I.      **The FAC Fails to Allege Sufficient Facts to State Claims for Disability Discrimination Under the ADA and HRS § 378-2**

The FAC falls short of alleging the required elements of a disability discrimination claim under the ADA or HRS § 378-2.[3]   To establish a prima facie case of discrimination, a plaintiff must typically show that (1) he or she is "disabled" within the meaning of the statute; (2) he or she is a "qualified individual" (that is, he or she is able to perform the essential functions of the job, with or without reasonable

_____

[3]The ADA, 42 U.S.C. § 12112(a), prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   HRS § 378-2(a)(1)(A) makes it an unlawful discriminatory practice "[f]or any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment" because of a person's disability.   Courts utilize the same framework for claims brought under the ADA and HRS § 378-2.   *See Tsuji v. Kamehameha Sch.*, 154 F. Supp. 3d 964, 973 n.6 (D. Haw. 2015), *aff'd*, 678 F. App'x 552 (9th Cir. 2017) ("[B]ecause the definitions of disability in the ADA and HRS § 378-2 are substantially identical, the Hawaii Supreme Court has expressly adopted the [ADA] analysis for establishing a prima facie case of disability discrimination under HRS § 378–2, and looks to the interpretations of analogous federal laws by the federal courts for guidance.") (citation and quotation marks omitted).

accommodations); and (3) he or she suffered an adverse employment action "because of" his or her disability. *U.S. Equal Employment Opportunity Comm'n v. MJC, Inc*., --- F.Supp.3d ---, 2018 WL 539328, at *12 (D. Haw. Jan. 24, 2018) (citing *Hutton v. Elf Atochem N. Am., Inc*., 273 F.3d 884, 891 (9th Cir. 2001)). Bowling does not allege sufficient factual content within the FAC to meet the first two elements of her disability discrimination claims.[4]

First, the FAC fails to include more than the conclusory allegation that Bowling "is disabled." FAC ¶¶ 17, 54. This is not sufficient. The FAC itself does not provide facts regarding the triggering "physical or mental impairment that substantially limits one or more of [Bowling's] major life activities." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004); *see also Lambdin v. Marriott Resorts Hospitality Corp*., 2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015) ("It is not enough for Lambdin to state, in conclusory fashion, that he has a disability. Having been injured or living with an impairment does not necessarily guarantee that one is protected by the ADA."); *Longariello v. Phoenix Union High Sch. Dist*., 2009 WL 4827014 (D. Ariz. Dec. 15, 2009) ("Although he alleges that he is 'disabled,' . . . Plaintiff fails to identify the nature of his impairment and how that

---

[4]An ADA plaintiff is not strictly bound by the elements of the *prima facie* case. However "those elements are [still] a useful tool in assessing whether" a complaint "meets the requirement in Rule 8(a) of the Federal Rules of Civil Procedure." *MJC, Inc*., 2018 WL 539328, at *13. That is, while an ADA complaint "need not include any magical invocation of '*prima face* case' language to satisfy Rule 8, ... [it still] cannot leave [the] opponent and the court with no information at all about whether or how [the affected individual] falls under the ADA." *Id*. at *3 (citation omitted).

impairment substantially limits one or more of his major life activities."). Although Bowling provides supplementary details in her opposition brief regarding the precise nature of her disability and impairment, *see* Mem. in Opp'n at 2, Dkt. No. 26, those factual details were withheld from the operative pleading and are found nowhere in the FAC.

Second, Bowling fails to provide sufficient facts to support the legal conclusion that she is a "qualified individual."[5] The FAC may not skip this step, but must allege some additional *facts* tending to show that Bowling is a qualified individual, rather than the bare legal conclusion that Defendants "den[ied] her reasonable accommodations and terminated her employment because she could not attend the Chairman's dinner due to her disability." FAC ¶ 55. *See, e.g., MJC, Inc.*, 2018 WL 539328, at *13 (dismissing complaint that "contain[ed] no facts tending to show that [plaintiff] is a qualified individual under the ADA" because the "court is left with no way to evaluate what the job-related requirements of the position were or whether [plaintiff] was capable of perform[ing]" them) (citing 29

---

[5] A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m) (explaining that a qualified individual is one who has "the requisite skill, experience, education, and other job-related requirements of the employment position").

C.F.R. § 1630.2(m)).   The FAC is entirely deficient with respect to this element of Bowling's disability discrimination claim.[6]

In short, Bowling does not allege necessary facts to support her disability discrimination claims.   Rather, she recites the conclusions that: she is disabled for purposes of the statutes, she was discriminated against on the basis of her disability, Defendants failed to reasonably accommodate her disability, and instead terminated her in retaliation for objecting to the denial of a reasonable accommodation.   These legal conclusions are inadequate to state a claim for violation of the ADA and HRS § 378-2.   Because Bowling fails to allege sufficient factual conduct as to the elements of her causes of action, Defendants' Motion is granted, and Bowling is granted leave to amend to cure the deficiencies in these claims.

_____

[6]Under *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), if the context of a discrimination case renders proof of qualified individual status unnecessary to state a discrimination claim, a plaintiff may no longer be required to plead facts related to that element.   *See* 534 U.S. at 511–12.   But where, as here and in most ADA cases, the qualified individual element remains a necessary component of the claim, a plaintiff "must still plead some facts tending to prove that element." *MJC, Inc.*, 2018 WL 539328, at *13–14.   *See also Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) ("To state a claim under [the ADA], the plaintiff must allege that ... [s]he is a qualified individual with a disability...." (citation omitted); *Kelley v. Corr. Corp. of Am.*, 750 F.Supp.2d 1132, 1139 (E.D. Cal. 2010) ("Plaintiff's first claim for relief alleges no facts at all to indicate whether Plaintiff is a qualified individual or what the essential elements of her job are or what the essential elements of an alternative job might be."); *Palma v. County of Stanislaus*, 2017 WL 6513282, at *5 (E.D. Cal. Dec. 20, 2017) ("In order to proceed with this suit, the parties (and the Court) must be made aware of ... whether Plaintiff was indeed qualified to perform the requisite tasks.   Because the Complaint does not do so, a necessary element is not plausibly pled.") (citation omitted)).

## II.  **Plaintiff Fails to State a Claim for Violation of the FMLA**

Bowling also fails to adequately allege facts supporting an FMLA claim. The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of or attempt to exercise any right provided under the statute. *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001).   Nor may an employer "discharge or in any manner discriminate against any individual for opposing [reporting, or instituting an action against an employer based on] a practice made unlawful" by the FMLA.   *Fresquez v. Cty. of Stanislaus*, 2014 WL 1922560, at *3 (E.D. Cal. May 14, 2014) (citing 29 U.S.C. §§ 2616(a)(2); (b)(1)).

The FAC alleges that Bowling "engaged in statutorily protected activity by . . . taking leave under the FMLA," FAC ¶ 59, and that Defendants "unlawfully retaliated against [her], by wrongfully terminating her employment . . . because she took FMLA leave," FAC ¶ 60.   The Court construes this cause of action as an FMLA interference claim, which requires a plaintiff to demonstrate that: (1) he or she was eligible for the FMLA's protections; (2) his or her employer was covered by the FMLA; (3) he or she provided sufficient notice of intent to take leave pursuant to the FMLA; (4) he or she was entitled to FMLA leave; and (5) the employer denied

him or her FMLA benefits to which plaintiff was entitled.   *See Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).[7]

Bowling does not allege in the FAC that she had a "serious health condition" that rendered her unable to perform the functions of her position nor any facts to draw a reasonable inference in support of such claim.[8]   There are no factual allegations regarding a particular condition that she suffered from, let alone the treatment she required, in order to establish the elements of her claim, including that she was entitled to FMLA leave when she alleges she was wrongfully terminated. Further, Plaintiff has not alleged *facts* that plausibly establish that Defendants terminated her because "she took FMLA leave."   FAC ¶ 60.   Indeed, Bowling's own description of her claim in her complaint appears to belie this legal conclusion: she contends that she was fired because she refused to fly to Florida to attend the awards dinner.   *See, e.g.*, FAC ¶ 27 ("On 2/15/16 Plaintiff was fired from her job because she refused to fly to Florida to attend the Chairman's dinner.").

---

[7]Interference claims prohibit "discriminating or retaliating against an employee for having exercised or attempted to exercise FMLA rights[,]" including "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions[.]" *Lacayo v. Donahoe*, 2015 WL 993448, at *13 (N.D. Cal. Mar. 4, 2015) (citation omitted); *see also Bachelder*, 259 F.3d at 1122 (noting that employers may not use the taking of FMLA leave as a negative factor in employment decisions).   The FAC does not allege any facts that demonstrate Bowling was discriminated against or discharged for formally opposing an unlawful practice under the FMLA or for participating in FMLA proceedings.   Thus, there is no Section 2615(a)(2) or 2615(b) claim at issue, and the Court treats her claim as one for FMLA interference.   *See also* Mem. in Opp'n at 14 (asserting that Bowling states a valid FMLA interference claim).

[8]A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."   29 U.S.C. § 2611(11).

In sum, there are insufficient facts alleged to support the legal conclusion that her termination was motivated by or meant to punish any request for FMLA leave and, as such, Bowling's FMLA interference claim fails. *See Bachelder*, 259 F.3d at 1122. Bowling's FMLA claim is dismissed with leave to amend.

### III.    The Title VII Retaliation Claim Is Dismissed For Failure to Exhaust

Bowling did not include her Title VII retaliation claim in her EEOC Charge. Title VII requires a plaintiff to exhaust his or her administrative remedies before filing a civil action against an employer. The scope of a plaintiff's Title VII action depends "'upon the scope of both the EEOC charge and the EEOC investigation.'" *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100–01 (9th Cir. 2002), as amended (Feb. 20, 2002) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). By fulfilling these exhaustion requirements, the Title VII plaintiff "afford[s] the agency an opportunity to investigate the charge." *Id*. at 1099 (citing 42 U.S.C. § 2000e–5(b)). *B.K.B.* further explains that "subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.; see also Sosa*, 920 F.2d at 1456 ("The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.").

Bowling's Charge details only her disability discrimination claims under the ADA and HRS § 378-2. Nothing in the Charge—or even the facts alleged in the FAC—would have put the EEOC or Defendants on notice that she was alleging a violation of Title VII.[9] The Charge states that she was terminated while on FMLA leave "due to a disability" and declares that Bowling "was discriminated against by my employer in violation of both the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.* and Hawaii's Fair Employment Practices Act HRS § 378-2." Charge, Bowling Decl. at 1, 5. To be clear, the Charge describes *only* discrimination and then termination based upon her unspecified "disability."

To the extent the FAC attempts to state a Title VII claim, it relies on an entirely different theory than her other claims, and, moreover, is wholly unsupported by factual allegations—nowhere does the Charge or FAC describe the activity protected *under Title VII* which resulted in her wrongful termination. In any event, any sort of Title VII-protected activity or related allegations in the FAC could not

_____

[9]Notwithstanding her attempt to capture her Title VII retaliation claim within her claim for disability discrimination under HRS § 378-2, she nonetheless fails to exhaust her Title VII claim. Title VII prohibits discharging any individual because of his or her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Neither the Charge nor the FAC mentions any protected category under Title VII—Bowling alleges only an unspecified "disability"—which is not a class protected by Title VII, and she does not allege that she engaged in any protected activity under Title VII for purposes of a retaliation claim. The Ninth Circuit has held, in the Title VII context, that "the opposition clause, by its terms, protects only those employees who oppose what they reasonably perceive as discrimination under the Act," whereby "the opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (emphasis in original).

have been reasonably expected to grow out of Bowling's Charge. *See Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (dismissing complaint because plaintiff never alleged disability discrimination during the EEOC investigation and those claims were not "like or reasonably related to" the race, color, religion, sex, and/or national origin Title VII claims he presented to the EEOC); *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (holding that a race-based discrimination claim would not reasonably trigger an investigation of disability discrimination because the "two claims involve[d] totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other"); *Friend v. Hegarty*, 2017 WL 1164291, at *5 (N.D. Cal. Mar. 29, 2017) (Plaintiff's "disability claim is not like or reasonably related to the allegations of discrimination based on race, national origin, sex, religion, color, and age that were presented to the EEOC. Courts have concluded that claims are not similar or related where, as here, the claims rely on different theories of discrimination or on different statutes."); *Berg v. McHugh*, 2015 WL 9024622, at *5 (N.D. Cal. Dec. 16, 2015) ("A claim for disability discrimination is not 'like or reasonably related to' the gender discrimination and retaliation claims Plaintiff presented to the EEO because it relies on a different theory and a different statute.") (citation omitted).

Given the information in the EEOC Charge, an investigation of any Title VII retaliation claim Plaintiff now brings could not reasonably be expected to grow out

of the investigation of her disability-related claims.   As a result, Bowling has failed to exhaust her administrative remedies for the Title VII claim, and it must therefore be dismissed without leave to amend.[10]

## IV.   The FAC Does Not Sufficiently Allege that DRI or Development LLC Were Bowling's Employers

Defendants seek dismissal of two entities—DRI and Development LLC—on the basis that neither was Bowling's "employer" and cannot be liable under the relevant statutes.   To the extent Bowling seeks to hold these entities liable as a joint employer, the FAC does not allege facts showing that such a joint-employment relationship actually exists.   The FAC alleges that Bowling's paychecks were issued by WMRP, FAC ¶ 9, out of a WMRP bank account, and that WMRP is reflected on her W-2, FAC ¶ 13.   It specifies, with respect to the three entities:

> DIAMOND RESORTS INTERNATIONAL is a trade name used by approximately 370 business entities including Defendants DIAMOND RESORTS INTERNATIONAL INC.; WEST MAUI RESORT PARTNERS, L.P.; DIAMOND RESORTS WEST MAUI DEVELOPMENT, LLC[.]   These defendants are collectively referred to hereinafter as "DRI". DRI is an integrated enterprise which is along with many other entities owned by DRI which conducts timeshare sales,

---

[10]Amendment of her EEOC Charge to include a Title VII claim would be futile because more than 300 days have passed since Bowling's allegedly retaliatory termination in February 2016.   *See Sims v. Salem Health Hosps. & Clinics*, 2017 WL 2468786, at *2 (D. Or. June 7, 2017) ("Plaintiff did not exhaust her administrative remedies within the statutory timeline, [therefore] Plaintiff's [Title VII] claim for relief is dismissed with prejudice."); *EEOC v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012) ("The 300-day limitations period is applicable in this case because Title VII extends the 180-day period to 300 days if filed in a 'worksharing' jurisdiction.... Hawaii and California are both 'worksharing' states....").

> exchange, management, and development activities throughout the United States and worldwide. . . . DRI is the 100% owner of multiple underlying DRI development entities, each of which is registered in the states wherein they do business as single purpose entities, such development entities providing timeshare interests in the form of deeded week timeshare interests. These development entities are the contracting party with DRI timeshare owners to the Purchase Agreement for deeded timeshare interests. . . . Because DRI is the 100% owner of the development entities it ultimately subsumes all the losses of its underlying development entities.

FAC ¶ 7. Bowling also alleges that DRI, Inc. is "a holding company and its principal asset is the ownership of equity interests in its direct and indirect subsidiaries, including those identified herein." FAC ¶ 4. Development LLC and WMRP are alleged to be "partners." FAC ¶¶ 5–6.

The FAC, however, does not allege the particular conduct of these entities that forms the basis for Bowling's various claims or how they each, in concert or individually, controlled the terms of her employment. *See EEOC v. La Rana Hawaii, LLC*, 888 F. Supp. 2d 1019, 1046 (D. Haw. 2012) ("The EEOC must allege specifically what wrongdoing it is assigning to each Defendant. If the EEOC intends to proceed on a theory of joint employer liability, it must allege facts sufficient to support its contention that both Defendants controlled the terms and conditions of the Claimants' employment.") (citing *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275–77 (9th Cir. 2003)).

Bowling does not provide sufficient facts to support the legal conclusion that any of these entities acted as joint employers.   In making such a determination, the Ninth Circuit applies an "economic reality test" that takes into account "all factors relevant to the particular situation."   *EEOC v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172, 1183 (D. Haw. 2012) (quoting *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003)).   "For example, the Ninth Circuit has considered whether the alleged joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled the employee and his work site."   *Global Horizons*, 860 F. Supp. 2d at 1183 (citing *Pac. Mar. Ass'n*, 351 F.3d at 1277).   There are no allegations that DRI or Development LLC exhibited any of these powers or characteristics with respect to Bowling.

The FAC asserts that WMRP issued her paychecks and was listed on her W-2, but contains no facts that any other entity held itself out as her employer nor does it appear reasonably likely that she was employed by all three jointly, based on the sparse facts in the FAC.   Indeed, there are no details demonstrating that any other entity acted as a joint employer with WMRP—that any other party controlled the terms and conditions of Bowling's employment.   The FAC's "conclusory allegation that [Defendants] were [plaintiff's] joint employer. . . is insufficient to withstand a Rule 12(b)(6) motion."   *Shah v. Littelfuse Inc.*, 2013 WL 1828926, at

*3–4 (N.D. Ill. Apr. 29, 2013) (quotation marks omitted); *cf. Pruitt v. Pers. Staffing Grp., LLC*, 2016 WL 6995566, at *4 (N.D. Ill. Nov. 30, 2016) (holding that plaintiffs stated plausible employment discrimination claims against defendant as their joint employer when allegations showed that defendant "had certain control over Plaintiffs' employment"); *Tritsis v. BankFinancial Corp.*, 2016 WL 5171785, at *2 (N.D. Ill. Sept. 21, 2016) (holding that plaintiff, an executive officer at a bank, sufficiently alleged that an entity was her joint employer when she alleged that the entity "exerted a significant degree of control" over her employment by determining bank executives' eligibility for stock options).  Without more, the allegations in the FAC are insufficient to establish the factors necessary for Defendants to be considered joint employers.

Insofar as Bowling conclusorily alleges that these entities were an "integrated enterprise," she fails to establish a joint-employment relationship.[11]  Moreover, she acknowledges that she does not currently possess necessary facts demonstrating that the relevant entities were either a single employer or alter egos.  *See* Mem. in Opp'n at 17 ("Plaintiff has not had the opportunity to conduct discovery to establish that

---

[11]Bowling's reliance on a complaint filed in an unrelated case from Tennessee involving DRI is perplexing, as it does not involve WMRP or Development LLC, and does not touch upon joint employer liability or control over an employment relationship, but instead involved entities with existing contractual relationships outside of the employment context altogether.  *See* Mem. in Opp'n at 6–7 (quoting *Diamond Resorts Int'l v. Phillips, Esq.*, Civ. No. 3:17-cv-001124 (M.D. Tenn. Aug. 7, 2017)).  This out-of-jurisdiction complaint does not establish that DRI is an "integrated entity" for purposes of the instant case.

[DRI], [WMRP], and [Development LLC] are liable to Plaintiff under either a single employer or alter ego theory.").

All told, as currently pled, the factual allegations in the Complaint are not sufficient to establish that either DRI or Development LLC was Bowling's employer, and Defendants' Motion is granted.   Because amendment may be possible, dismissal of these parties is with leave to amend.

## V.   <u>Leave To Amend</u>

Because amendment of the claims and parties dismissed by this Order may be possible, with the exception of the Title VII retaliation claim, Bowling is granted leave to amend to address the deficiencies in the FAC, by no later than August 3, 2018.   Should she choose to amend any of the dismissed causes of action and/or Defendants, Bowling must allege additional facts as to each element required to state a claim as to each party.   The Court cautions Bowling to carefully consider whether she can allege facts stating a cognizable claim as to each cause of action and as to each Defendant, in any amended complaint she considers filing with this Court.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss, Dkt. No. 18, is GRANTED.   Bowling is granted limited leave to file an amended complaint to attempt to cure the deficiencies noted in this Order by **August 3, 2018**.

IT IS SO ORDERED.

DATED: July 2, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*Bowling v. Diamond Resorts Int'l, Inc. et al.*, CV NO. 17-00562 DKW-RLP; **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

21